**IN RE W.B.M.**

[202 N.C. App. 606 (2010)]

IN THE MATTER OF: W.B.M.,[1] A MINOR CHILD, PETITIONER: KELLY HOLT

No. COA09-205

(Filed 2 March 2010)

## 1. Appeal and Error— preservation of issues—constitutional challenge

The allegations in petitioner father's motion were sufficient under N.C. R. App. P. 10(b)(1) to preserve his constitutional challenge to the procedure for placing names of individuals who have allegedly abused or neglected children on the Responsible Individual's List under N.C.G.S. § 7B-323.

## 2. Constitutional Law— North Carolina—due process—North Carolina Juvenile Code—procedure for placing name on Responsible Individual's List—abused or neglected children—preponderance of evidence

The challenged statutory procedures for placing an individual's name on the Responsible Individual's List (RIL) under Articles 3 and 3A of the North Carolina Juvenile Code for those who have allegedly abused or neglected children violated an individual's due process rights under Article I, Section 19 of the North Carolina Constitution. An individual has a right to notice and an opportunity to be heard before being placed on the RIL. At a pre-deprivation hearing, the DSS director shall have the burden of proving abuse or serious neglect and identifying the responsible individual by a preponderance of the evidence.

## 3. Child Abuse and Neglect— Responsible Individual's List— untimely order

While the Court of Appeals disapproved of the inordinate delay of more than ten months past the statutory time period set under N.C.G.S. § 7B-323(d) for entry of the written order, petitioner was not entitled to have · his name removed from the Responsible Individual's List, consisting of names of those who have allegedly abused or neglected children, based on the untimeliness of the district court's order.

Appeal by Petitioner from orders entered 30 July and 17 October 2008 by Judge J.H. Corpening, II in New Hanover County District Court. Heard in the Court of Appeals 3 September 2009.

1. The minor child's initials are used to protect the child's identity.

**IN RE W.B.M.**

[202 N.C. App. 606 (2010)]

*Miriam M. Thompson for Petitioner.*

*Dean W. Hollandsworth for Respondent New Hanover County Department of Social Services.*

STEPHENS, Judge.

The pivotal issue raised by this appeal is whether the statutory procedures for placing an individual's name on the Responsible Individual's List under Articles 3 and 3A of the North Carolina Juvenile Code violate the individual's procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the North Carolina Constitution. For the reasons stated below, we conclude that, at a minimum, the challenged statutory procedures violate an individual's due process rights under Article I, Section 19 of the North Carolina Constitution.

## I.  Statutory Scheme

Petitioner challenges the State's procedures for placing the names of individuals who have allegedly abused or neglected children on the Responsible Individuals List ("RIL"). As this is an issue of first impression before this Court, a full explanation of the statutory scheme governing the RIL is essential for an understanding of this case.

### A.  The Responsible Individuals List

Chapter 7B, Division 01, Article 3 of the North Carolina General Statutes governs the screening and assessment of abuse and neglect reports of children, and the process by which substantiated reports may be reviewed. N.C. Gen. Stat. §§ 7B-300 to -311 (2007). The Department of Health and Human Services ("DHHS") maintains "a list of responsible individuals identified by county directors of social services as the result of investigative assessment responses" to reports of child maltreatment. N.C. Gen. Stat. § 7B-311(b). Information from this list may be provided by DHHS to "child caring institutions, child placing agencies, group home facilities, and other providers of foster care, child care, or adoption services that need to determine the fitness of individuals to care for or adopt children." *Id.*

### B.  Reporting and Initial Placement on the RIL

The RIL procedures are triggered by reports of suspected child maltreatment made to the department of social services. N.C. Gen.

**IN RE W.B.M.**

[202 N.C. App. 606 (2010)]

Stat. § 7B-301. State law places an affirmative duty on all individuals and institutions who have "cause to suspect that any juvenile is abused, neglected, or dependent . . . [to] report the case of that juvenile to the director of the department of social services in the county where the juvenile resides or is found." *Id.* Upon receipt of a report, "the director of the department of social services shall make a prompt and thorough assessment . . . in order to ascertain the facts of the case, the extent of the abuse or neglect, and the risk of harm to the juvenile[.]" N.C. Gen. Stat. § 7B-302(a).

Within five working days of completing an investigative assessment response that results in a determination of abuse or serious neglect, the director must notify DHHS of the results of the assessment and must give personal written notice to the individual deemed responsible for the abuse or serious neglect. N.C. Gen. Stat. § 7B-320(a). The notice to the responsible individual must include the following:

(1) A statement informing the individual of the nature of the investigative assessment response and whether the director determined abuse or serious neglect or both.

(2) A statement summarizing the substantial evidence supporting the director's determination without identifying the reporter or collateral contacts.

(3) A statement informing the individual that the individual's name has been placed on the responsible individuals list as provided in [N.C. Gen. Stat. §] 7B-311 . . . .

(4) A clear description of the actions the individual must take to have his or her name removed from the responsible individuals list. . . .

N.C. Gen. Stat. § 7B-320(c).

### C. Procedures for Removal from the RIL

#### 1. Review by the Director

"An individual who has been identified as a responsible individual as the result of an investigative assessment response may, within 30 days after receipt of the notice under [N.C. Gen. Stat. §] 7B-320(c), request that the director who determined the abuse or serious neglect and identified the individual as a responsible individual expunge the individual's name from the responsible individuals list." N.C. Gen.

Stat. § 7B-321(a). Upon receipt of a timely request for expunction, "the director shall review all records, reports, and other information gathered during the investigative assessment response . . . to determine whether there is substantial evidence to support the determination and the placement of the individual's name on the responsible individuals list." N.C. Gen. Stat. § 7B-321(b). "If the director decides that there is not substantial evidence in the records, reports, and other information gathered during the investigative assessment response to support a determination of abuse or serious neglect and to support the identification of the individual as a responsible individual," the director must notify DHHS to expunge the individual's name from the RIL. N.C. Gen. Stat. § 7B-321(b)(1). "If the director decides that there is substantial evidence . . . to support a determination of abuse or serious neglect and to support the identification of the individual as a responsible individual, the director may . . . refuse the request for an expunction." N.C. Gen. Stat. § 7B-321(b)(2). "If the director does not provide a written response to a request for expunction within 15 working days after its receipt, the failure shall be considered a refusal to expunge the individual's name . . . ." N.C. Gen. Stat. § 7B-321(c). "An individual whose request for expunction has been refused by a director . . . may, within 30 days after receipt of the notice of refusal, request a review of the director's decision by the district attorney . . . or file a petition requesting expunction with the district court . . . ." N.C. Gen. Stat. § 7B-321(e).

*2. Review by the District Attorney*

Within 30 days of receiving a request to review, the district attorney shall review the director's decision to refuse to expunge the individual's name from the responsible individuals list and make a determination of agreement or disagreement with the director's decision. N.C. Gen. Stat. § 7B-322(b). For purposes of the review, the director shall provide the district attorney all the information the director used in making the determination. *Id.*

If the district attorney determines there is "not substantial evidence to support a determination of abuse or serious neglect and to support the identification of an individual as a responsible individual," the individual's name must be expunged from the RIL. N.C. Gen. Stat. § 7B-322(c). If the district attorney determines there is "substantial evidence to support a determination of abuse or serious neglect and to support the identification of an individual as a responsible individual," the individual's name must remain on the list. N.C. Gen. Stat. § 7B-322(d).

### 3. Review by the District Court

"Within 30 days of the receipt of notice of the director's decision under [N.C. Gen. Stat. §] 7B-321(b) or (c), or within 30 days from the date of a determination by the district attorney under [N.C. Gen. Stat. §] 7B-322, whichever is later, an individual may file a petition for expunction with the district court of the county in which the abuse or serious neglect report arose." N.C. Gen. Stat. § 7B-323(a). Upon receipt of a filed petition for expunction, the clerk of court "shall calendar the matter for hearing at a session of district court hearing juvenile matters and send notice of the hearing to the [individual] and the director." N.C. Gen. Stat. § 7B-323(b). "At the hearing, the director shall have the burden of proving by a preponderance of the evidence the correctness of the director's decision determining abuse or serious neglect and identifying the individual seeking expunction as a responsible individual." *Id.*

"Within 30 days after completion of the hearing, the court shall enter a signed, written order containing findings of fact and conclusions of law." N.C. Gen. Stat. § 7B-323(d). "If the court concludes that the director has not established by a preponderance of the evidence the correctness of the determination of abuse or serious neglect or the identification of the responsible individual, the court shall reverse the director's decision[,]" and the individual's name must be expunged from the list. *Id.*

"Notwithstanding any time limitations contained in this section or the provisions of [N.C. Gen. Stat. §] 7B-324(a)(3) or (4), a district court may review a determination of abuse or serious neglect at any time if the review serves the interests of justice or for extraordinary circumstances." N.C. Gen. Stat. § 7B-323(e).

### 4. Review by the Appellate Court

Either party may appeal the district court's decision to the Court of Appeals. N.C. Gen. Stat. § 7B-323(f); N.C. Gen. Stat. § 7A-27(c) (2007).

### D. Individuals Ineligible to Request Expunction

An individual whose name has been placed on the RIL may not challenge that placement if any of the following apply:

(1) The individual is criminally convicted as a result of the same incident. . . .

(2) The individual is a respondent in a juvenile court proceeding regarding abuse or neglect resulting from the same incident. . . .

(3) That individual fails to make a timely request for expunction with the director who made the determination . . . .

(4) That individual fails to file a petition for expunction with the district court in a timely manner.

(5) That individual fails to keep the county department of social services informed of the individual's current address during any request for expunction . . . .

N.C. Gen. Stat. § 7B-324(a).

The statutory scheme is silent as to how long an individual's name remains on the RIL if the individual does not request an expunction, is denied an expunction, or is ineligible to request an expunction.

## II. Factual Background and
## Procedural History in the Present Case

Petitioner is the biological father of the minor child W.B.M. ("the child"). Petitioner is not married to the child's mother ("the mother") and has secondary custody of the child with visitation on Tuesdays, Thursdays, and every other weekend. Petitioner and the mother have a cordial relationship and by all accounts, visitation between Petitioner and his son has always gone well.

The mother testified that around June of 2006, the child started to exhibit troublesome behaviors. On at least two different occasions, the mother witnessed the child trying to insert his fingers into his rectum. When she asked him why he was doing that, he said because he " 'had to do this' " and that " 'this is what Kelly do to me[.]' " The mother spoke with the child's pediatric nurse who advised her to make a report with the department of social services. Also around that time, the child started not wanting to go with strangers, started displaying angry behavior, wouldn't go to the bathroom at daycare, and started masturbating.

The mother made a report to the New Hanover County Department of Social Services ("DSS"). Ruth Massey, an investigator with DSS, interviewed the mother. She then took the mother and the child to the Brunswick County Sheriff's Department to be interviewed. Detective Simpson of the Sheriff's Department conducted the inter-

view with the child, which was videotaped, and Ms. Massey observed the interview from another room. The child's statements during the interview "mirrored" his statements to his mother.

After the interview, Detective Simpson had the mother call Petitioner on the telephone "to try and get any information" from him about the child's behaviors and allegations. Detective Simpson advised the mother to tell Petitioner that there was an investigation and that the sheriff's department needed to speak with him. During that phone call, Petitioner denied any wrongdoing.

On 29 September 2006, the child was given a physical examination by Dr. Archer at the Children's Clinic. No physical signs of abuse were found. On 5 October 2006, the child was taken for a second physical examination at the Carousel Center. Beth Deaton, P.A., attempted to examine the child, who did not want to participate in the examination.

After the child had been interviewed and physically examined, Ms. Massey contacted Petitioner and asked him to come in for an interview. Ms. Massey interviewed Petitioner on 6 October 2006 for "approximately a half-hour, 45 minutes, roughly." Petitioner denied any wrongdoing and could not think of any reason the child would make such statements about him. He did voice his concern regarding the mother's boyfriend because the boyfriend had an extensive criminal history. Ms. Massey asked Petitioner to voluntarily suspend his visitation with the child during the investigation or she would get a court order suspending it. Petitioner agreed to voluntarily suspend visitation with his son.

Petitioner called Ms. Massey several times after the interview to inquire when Detective Simpson was going to contact him and interview him. Detective Simpson never interviewed him and there was no further investigation into the matter.

Ms. Massey's next face-to-face contact with Petitioner was on 12 January 2007, when she informed him that the allegations of sexual abuse had been substantiated, that he was being placed on the RIL, and that the case was being closed. DSS did not enter into a case plan with Petitioner as he lived in Brunswick County and did not enter into a case plan with the mother as she had moved to Bladen County.

DSS followed up with the mother and requested that she continue to provide protection for the child by not allowing Petitioner any con-

tact with the child. DSS also asked Petitioner to seek "sex offender-specific treatment counseling" and informed him that if a counselor made contact with DSS and informed them that there was no risk to the child, Petitioner would be allowed contact with his son at that time. DSS also sent a letter to Terry McCoy, a social worker with the Bladen County Department of Social Services, advising her that sexual abuse had been substantiated but that DSS had closed the case as the mother had moved, and further advising her that Petitioner was to have no contact with the child unless the above-stated conditions had been met.

Within 30 days of being notified of his placement on the RIL, Petitioner requested that the DSS Director review that decision. On 27 February 2007, the DSS Director notified Petitioner that he was upholding the decision to place Petitioner on the RIL.

Petitioner timely requested that the District Attorney's office review the decision of the DSS Director. On 24 May 2007, New Hanover County Assistant District Attorney Connie Jordan notified Petitioner that she was upholding the DSS Director's decision to keep Petitioner on the RIL.

On 21 June 2007, Petitioner filed a Petition for Expunction from the RIL in New Hanover County District Court. After a hearing on 23 August and 12 September 2007, Judge Corpening denied Petitioner's expunction request and ordered DSS attorney Dean Hollandsworth to prepare an order with detailed findings of fact.

Although N.C. Gen. Stat. § 7B-323(d) requires that a written order containing findings of fact and conclusions of law be entered within 30 days after conclusion of the expunction hearing, as of 7 July 2008, no order had been entered.

On 7 July 2008, Petitioner filed a Motion to Remove Kelly Holt's Name from the Responsible Individual's List, alleging, *inter alia*, that N.C. Gen. Stat. § 7B-323 is unconstitutional. On 30 July 2008, a written order denying Petitioner's Petition for Expunction was entered. Also on that date, a hearing on Petitioner's Motion to Remove was held, and the trial court orally denied the motion. On 17 October 2008, the trial court entered a written order denying Petitioner's Motion to Remove and "declin[ing] to find at this stage of the proceeding that [N.C. Gen. Stat. §] 7B-323 is unconstitutional." From the 30 July and 17 October 2008 orders, Petitioner appeals.

## III. Discussion

### A. Preservation of Constitutional Challenge

[1] We first address the State's argument that Petitioner failed to raise any constitutional challenge to the RIL procedures while he "exercised the process of expunction of his name from the RIL" and, thus, Petitioner is barred from now raising a constitutional challenge on appeal. We disagree.

In Petitioner's Motion to Remove Kelly Holt's Name from the Responsible Individual's List, filed 7 July 2008, Petitioner alleged as follows:

9. That North Carolina General Statute § 7B-323 is unconstitutional on its face because the listing of Petitioner's name on said list without a prior hearing constitutes a violation of the Petitioner's procedural due process rights under the 5th and 14th amendments to the United States Constitution and similar provisions of the North Carolina Constitution.

10. That North Carolina General Statute § 7B-323 is unconstitutional on its face because the burden of proof . . . fails to satisfy the minimum requirements of due process.

These allegations in Petitioner's motion are sufficient to preserve the issue for our review. N.C. R. App. P. 10(b)(1). The State's argument is overruled.

### B. Due Process Challenge

[2] Petitioner argues that the statutory procedures for placing an individual on the RIL are unconstitutional on their face as they violate the individual's procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 19 of the North Carolina Constitution.

"A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully . . . ." *United States v. Salerno*, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 707 (1987). "The presumption is that any act passed by the legislature is constitutional, and the court will not strike it down if such legislation can be upheld on any reasonable ground." *Ramsey v. N.C. Veterans Comm'n*, 261 N.C. 645, 647, 135 S.E.2d 659, 661 (1964). An individual challenging the facial constitutionality of a legislative act "must establish that no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745, 95 L. Ed. 2d at 707.

## IN RE W.B.M.

[202 N.C. App. 606 (2010)]

The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. A similar protection, that no "State [shall] deprive any person of life, liberty, or property, without due process of law" is contained in the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV, § 1. Article I, Section 19 of the North Carolina Constitution warrants that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. The expression "the law of the land" as used in Article I, Section 19 of the North Carolina Constitution, is synonymous with the expression "due process of law." *State v. Ballance*, 229 N.C. 764, 769, 51 S.E.2d 731, 734 (1949).

Procedural due process protection ensures that government action depriving a person of life, liberty, or property is implemented in a fair manner. *State v. Thompson*, 349 N.C. 483, 491, 508 S.E.2d 277, 282 (1998). We examine procedural due process questions in two steps: first, we must determine whether there exists a liberty or property interest which has been interfered with by the State, *Bd. of Regents v. Roth*, 408 U.S. 564, 571, 33 L. Ed. 2d 548, 557 (1972); second, we must determine whether the procedures attendant upon that deprivation were constitutionally sufficient. *Hewitt v. Helms*, 459 U.S. 460, 472, 74 L. Ed. 2d 675, 688 (1983).

Under both our federal and state constitutions, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge*, 424 U.S. 319, 333, 47 L. Ed. 2d 18, 32 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 14 L. Ed. 2d 62, 66 (1965)); *accord Thompson*, 349 N.C. at 498, 508 S.E.2d at 286. The United States Supreme Court has consistently held that some form of hearing is required before a final deprivation of a protected interest, although the exact nature and mechanism of the required procedure will vary based upon the unique circumstances surrounding the controversy. *See Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998) (citing *Mathews*, 424 U.S. at 333, 47 L. Ed. 2d at 32; *Wolff v. McDonnell*, 418 U.S. 539, 557-58, 41 L. Ed. 2d 935, 952 (1974)). Three factors must be considered by a court in determining what procedures are constitutionally sufficient:

IN RE W.B.M.

[202 N.C. App. 606 (2010)]

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335, 47 L. Ed. 2d at 33; *see also Soles v. City of Raleigh Civil Serv. Comm'n*, 345 N.C. 443, 448, 480 S.E.2d 685, 688, *reh'g denied*, 345 N.C. 761, 485 S.E.2d 299 (1997).

Applying these principles to the present case, this Court must first decide whether an individual has a protected liberty or property interest in not being listed on the RIL. If so, then this Court must determine whether the present statutory scheme provides individuals with sufficient notice and an opportunity to be heard at a meaningful time and in a meaningful manner. If the process is inadequate, this Court must determine what alternative or additional protections are necessary to satisfy due process.

### 1. Constitutionally Protected Interest

Article I, Section 1 of the North Carolina Constitution declares that "[w]e hold it to be self-evident that all persons are created equal; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty, the enjoyment of the fruits of their own labor, and the pursuit of happiness." N.C. Const. art. I, § 1. Article I, Section 19 of the North Carolina Constitution prescribes that "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, or in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. art. I, § 19. Our Supreme Court has explained that

[t]hese fundamental guaranties are very broad in scope, and are intended to secure to each person subject to the jurisdiction of the State extensive individual rights, including that of personal liberty. The term "liberty," as used in these constitutional provisions . . . includes the right of the citizen to be free to use his faculties in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; [and] to pursue any livelihood or vocation . . . .

*Ballance*, 229 N.C. at 769, 51 S.E.2d at 734 (citations and quotation marks omitted).

**IN RE W.B.M.**

[202 N.C. App. 606 (2010)]

N.C. Gen. Stat. § 7B-320(c)(3) allows DHHS to provide information from the RIL "to child caring institutions, child placing agencies, group home facilities, and other providers of foster care, child care, or adoption services that need to determine the fitness of individuals to care for or adopt children." N.C. Gen. Stat. § 7B-320(c)(3). "Information from this list shall be used exclusively for the purpose of determining current or prospective employability or fitness to care for or adopt children." 10A N.C. Admin. Code 70A.0102(c) (2007).

Thus, placement on the RIL carries consequences that are serious to the accused individual. Those consequences flow in part from the personal stigma undoubtably attached to the accused individual by persons acquiring the individual's name from the list, even if such acquisition is "exclusively" for a determination of the individual's "employability or fitness to care for or adopt children." *Id.* The consequences also flow from the actions of the designated agencies that may penalize the individual on the basis of his or her inclusion on the RIL. An individual who is branded as a "child abuser" as a result of his or her inclusion on the RIL is "maimed and crippled. The injury is real, immediate, and incalculable." *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 175, 95 L. Ed. 817, 856 (1951) (Frankfurter, J., concurring) (discussing the serious consequences resulting to an organization that is branded a "Communist" organization by the Attorney General of the United States).

We conclude that inclusion on the RIL deprives an individual of the liberty interests guaranteed under our State Constitution by inhibiting the individual from using his faculties to adopt, foster, and care for children, earning his livelihood in the childcare field, or pursuing or securing employment in the childcare field.

### 2. Procedures Used

Because an individual's liberty interests are adversely affected by virtue of being listed on the RIL, this Court must balance the *Mathews* factors to determine whether the statutory procedures adequately protect the individual's interests. We first address the factors relating to the personal and government interests involved, and then analyze the risk of error created by the procedures established by the State.

### a. Private Interest

As discussed above, the private interest affected by inclusion on the RIL is an individual's liberty: that is, the individual's liberty to be free to use his faculties to adopt, foster, and care for children, to earn

his livelihood in the childcare field, and to pursue a career in the childcare profession.

### b. Countervailing State Interest

On the other hand, the State has an undeniably vital interest in protecting children from abuse and neglect. *See Santosky v. Kramer,* 455 U.S. 745, 766, 71 L. Ed. 2d 599, 615 (1982) (noting state's interest in protection of children). We agree with the State that there is a significant interest on the part of the State in maintaining the RIL "to prevent those who have harmed children from being employed in positions where they would have access to further victims by way of their employment."

### c. Risk of Erroneous Deprivation

Petitioner argues that the statutory procedures are constitutionally infirm because they permit an individual's name to be listed on the RIL without first providing an adequate opportunity to be heard. He contends that an individual is entitled to a pre-deprivation hearing before being placed on the RIL.

It is a well-settled principle that if the State feasibly can provide a hearing before depriving an individual of a protected interest, it generally must do so in order to minimize "substantively unfair or mistaken deprivations[.]" *Fuentes v. Shevin,* 407 U.S. 67, 81, 32 L. Ed. 2d 556, 570, *reh'g denied,* 409 U.S. 902, 34 L. Ed. 2d 165 (1972). Indeed, "[i]f the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented." *Id.* While an individual's possessions can be returned to him if it is determined at a later hearing that they were unfairly or mistakenly taken in the first place and damages may even be awarded to him for such a wrongful deprivation, "no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred." *Id.* at 81-82, 32 L. Ed. 2d at 570. "This Court has not . . . embraced the general proposition that a wrong may be done if it can be undone." *Stanley v. Illinois,* 405 U.S. 645, 647, 31 L. Ed. 2d 551, 556 (1972).

Here, the RIL procedures are triggered by a report of suspected child maltreatment made to the department of social services. N.C. Gen. Stat. § 7B-301. In response to the report, the department of social services director must make a "prompt and thorough assessment . . . to ascertain the facts of the case, the extent of the abuse

**IN RE W.B.M.**

[202 N.C. App. 606 (2010)]

or neglect, and the risk of harm to the juvenile[.]" N.C. Gen. Stat. § 7B-302(a). If, at the conclusion of the assessment, the director determines that there is "substantial evidence" to support a determination that the accused individual abused or seriously neglected the child, the individual is notified of the nature of the investigative assessment and his or her name is placed on the RIL. N.C. Gen. Stat. § 7B-320(a).

Because there is no case law in North Carolina controlling our analysis of the issues raised by this appeal, we will look to other jurisdictions for guidance. While we are not bound by the decisions of courts in those jurisdictions, we find their reasoning to be instructive in this case and conclude that the DSS investigation alone is plainly insufficient to support the loss of liberty that accompanies listing on the RIL. *See Jamison v. Dep't of Soc. Servs., Div. of Family Servs.,* 218 S.W.3d 399, 408 (Mo. 2007) ("The investigation alone, even after review by the local director, is plainly insufficient to support the loss of liberty that accompanies listing in the Central Registry."[2]). Although the accused individual may have the opportunity to respond to the investigator's inquiries,[3] this opportunity is not guaranteed and there is no requirement that, at the time of the interview, the individual be apprised of the allegations against him. Furthermore, "[an] investigation is exactly that—an investigation. No matter how elaborate, an investigation does not replace a hearing." *Winegar v. Des Moines Indep. Cmty. Sch. Dist.,* 20 F.3d 895, 901 (8th Cir.), *cert. denied,* 513 U.S. 964, 130 L. Ed. 2d 340 (1994). Consequently, the face-to-face interview cannot constitute an opportunity to be heard "at a meaningful time or in a 'meaningful manner.' " *Jamison,* 218 S.W.3d at 409 (citation omitted).

Furthermore, "[t]he length and consequent severity of a deprivation are considered in determining what procedural protections are constitutionally required." *Id. (quoting Belton v. Bd. of Police*

---

2. The Central Registry is a statewide registry maintained by the Family Support and Children's Division ("the division") of Missouri's Department of Social Services. Mo. Rev. Stat. § 210.109 (2007). Similar to the RIL, the registry is a list "of persons where the division has found probable cause to believe prior to August 28, 2004, or by a preponderance of the evidence after August 28, 2004, or a court has substantiated through court adjudication that the individual has committed child abuse or neglect[.]" Mo. Rev. Stat. § 210.110(3) (2007).

3. In an investigation into a report of abuse or neglect, the director of social services shall conduct "a face-to-face interview with the alleged perpetrator or perpetrators unless there is documentation [in the case record] to explain why such an interview was not conducted." 10A N.C. Admin. Code 70A.0106(f) (2007).

*Comm'rs*, 708 S.W.2d 131, 137 (Mo. 1986)). Here, an individual could spend more than 169 days on the RIL before the clerk of court calendars an expunction hearing. *See* N.C. Gen. Stat. §§ 7B-320, 321, 322, and 323. Additionally, the procedures set no time limit on how long the clerk of court can take to schedule a hearing. *See* N.C. Gen. Stat. § 7B-323(b) ("[U]pon receipt of a filed petition for expunction[,] [the clerk of court] shall calendar the matter for hearing at a session of district court hearing juvenile matters . . . .").[4] This extended delay before an individual receives an opportunity to be heard is a significant factor in determining whether a pre-deprivation hearing is needed. *See Mathews*, 424 U.S. at 341, 47 L. Ed. 2d at 37 (delay between the deprivation and final decision after a hearing "is an important factor in assessing the impact of official action on the private interests" (citation and quotation marks omitted)); *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 270, 95 L. Ed. 2d 239, 255 (1987) (Brennan, J., concurring in part and dissenting in part) (the adequacy of and need for "pre[-]deprivation procedures is in significant part a function of the speed with which a post[-]deprivation or final determination is made").

The failure to provide a pre-deprivation hearing is acceptable only if (1) a pre-deprivation hearing would be "unduly burdensome in proportion to the liberty interest at stake," (2) the State is unable to anticipate the deprivation, or (3) an emergency requires immediate action. *Zinermon v. Burch*, 494 U.S. 113, 132, 108 L. Ed. 2d 100, 118 (1990). Neither the second nor the third situation is implicated in this instance. Furthermore, with regard to the first situation, holding a hearing to determine if there is sufficient evidence to place an individual on the RIL before placing the individual on the list is no more functionally or financially burdensome than holding a hearing after the individual has been placed on the list to determine if the individual should be removed from the list.

Nonetheless, the State argues that a post-deprivation hearing is sufficient to satisfy due process because

---

4. Moreover, "[w]ithin 30 days after completion of the hearing, the court shall enter a signed, written order containing findings of fact and conclusions of law." N.C. Gen. Stat. § 7B-323(d). Thus, an individual must wait as long as 30 days after completion of the hearing for the trial court to enter a written order. Notwithstanding this statutory time limit, however, in this case, the trial court failed to enter a written order after the completion of hearing on 12 September 2007 until 30 July 2008, approximately 322 days after the hearing, and only after Petitioner filed a motion on 7 July 2008 drawing the court's attention to this failure.

**IN RE W.B.M.**

[202 N.C. App. 606 (2010)]

the actionable private interest, if any exists in this case, is far outweighed by the [S]tate's interest in keeping pedophiles, violent abusive persons and other individuals capable of serious harm to children out of employment that would give them an avenue to perpetrate more harm on the [S]tate's most vulnerable population.

While it is uncontested that protecting children from abuse and neglect is a significant State interest, this goal "can be fulfilled by means other than depriving individuals of substantial liberty interests without a prior opportunity to be heard." *Jamison*, 218 S.W.3d at 410. The State has not shown that inclusion on the RIL is required for the department of social services or law enforcement to respond to emergencies by investigating reports of abuse or neglect, removing children from dangerous environments, or pursuing criminal charges against an alleged perpetrator. Rather, the RIL provides information to employers in the childcare industry as a complement to the additional and more immediate protective measures permitted by North Carolina law. However, "[t]he need for expediency cannot overshadow the fact that a critical decision [is] being made about [an individual.]" *New York v. David W.*, 733 N.E.2d 206, 212 (N.Y. 2000) (procedures used to determine sex offender registry requirements and dissemination guidelines helped notify vulnerable populations of a possible threat but were unconstitutional because they failed to provide probationers an opportunity to be heard before deprivation of a liberty interest).

After weighing the significant interests of an individual against those of the State, and examining the risk of erroneous deprivation inherent in the current statutory procedures, we hold that an individual has a right to notice and an opportunity to be heard before being placed on the RIL. As currently written, the RIL procedures are unconstitutional under Article I, Section 19 of the North Carolina Constitution because they violate an individual's due process rights by listing the individual on the RIL prior to a hearing.

### 3. Burden of Proof

The next question is what standard of proof the State must meet at a pre-deprivation hearing to satisfy the minimum requirements of due process.

We conclude that due process requires the State to substantiate a report of child abuse or neglect by a preponderance of the evidence before an individual's name can be included in and disseminated from

the RIL. *See Jamison,* 218 S.W.3d at 412 ("Due process requires a [Child Abuse and Neglect Review Board] to substantiate a report of child abuse or neglect by a preponderance of the evidence before an individual's name can be included in and disseminated from the Central Registry.").

Currently, at the district court hearing provided under N.C. Gen. Stat. § 7B-323, "the director shall have the burden of proving by a preponderance of the evidence *the correctness of the director's decision* determining abuse or serious neglect and identifying the individual seeking expunction as a responsible individual." N.C. Gen. Stat. § 7B-323(b) (emphasis added). In the district court hearing in the present case, the presiding judge described the "whole set of statutes" as "interesting . . . because we're not here trying the issue of sexual abuse. We're here on the review of the correctness of the Director's decision and whether the Director can establish by a preponderance of the evidence the correctness of his decision." The judge further explained that the correctness of the director's decision "is based on whether there is substantial evidence in the records, reports, and other information gathered during the investigation to support the decision."

While the statute correctly identifies the burden of proof required at the hearing as a preponderance of the evidence, the statute incorrectly identifies the fact that must be proven by a preponderance of the evidence as "the correctness of the director's decision[,]" *id.,* instead of whether the accused individual perpetrated abuse or serious neglect of a juvenile. Indeed, as argued by Petitioner, the statute only allows the judge to review the reports and records accumulated during the initial investigation to determine if the department of social services "came up with enough" to justify its decision. Such limited review violates an individual's right to be heard "in a meaningful manner[,]" *Mathews,* 424 U.S. at 333, 47 L. Ed. 2d at 32 (citation and quotation marks omitted), as it does not allow the fact finder to weigh the evidence, thus eviscerating the purpose of allowing the accused individual the opportunity to be heard and to present his or her case.

In order to satisfy due process, we hold that at the constitutionally necessary pre-deprivation hearing in the district court, the director shall have the burden of proving abuse or serious neglect and identifying the responsible individual by a preponderance of the evidence.

**IN RE W.B.M.**

[202 N.C. App. 606 (2010)]

### C. *Untimely Order*

[3] Finally, Petitioner argues that the trial court erred in failing to remove his name from the RIL because the written order from the hearing on Petitioner's petition for expunction was entered outside of the statutory 30-day time limit.

N.C. Gen. Stat. § 7B-323(d) requires a written order containing findings of fact and conclusions of law to be entered within 30 days after the conclusion of an expunction hearing in district court. N.C. Gen. Stat. § 7B-323(d). In this case, the district court held an expunction hearing on 23 August and 12 September 2007 and, on 12 September 2007, announced in open court that Petitioner's name should not be expunged from the RIL. However, an order was not reduced to writing, signed, and filed by the district court until 30 July 2008, more than 10 months past the statutory time period.

Petitioner argues in his brief that he was prejudiced by such delay and, thus, his name should be removed from the RIL. However, at oral argument, counsel for Petitioner conceded that this matter is controlled by our Supreme Court's ruling in *In re T.H.T.*, 362 N.C. 446, 665 S.E.2d 54 (2008), such that "[m]andamus is the proper remedy when the trial court fails to . . . enter an order as required by statute." *Id.* at 454, 665 S.E.2d at 59.

Accordingly, while we disapprove of the inordinate delay in entry of the written order, we conclude that Petitioner was not entitled to have his name removed from the RIL based on the untimeliness of the district court's order. Petitioner's argument is overruled.

### III. *Conclusion*

It has long been recognized that "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights." *Joint Anti-Fascist Refugee Comm.*, 341 U.S. at 170, 95 L. Ed. at 853 (footnote omitted). "The validity and moral authority of a conclusion largely depend on the mode by which it was reached . . . [and n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." *Id.* at 171-72, 95 L. Ed. at 854. "Due process is perhaps the most majestic concept in our whole constitutional system. While it contains the garnered wisdom of the past in assuring fundamental justice, it is also a living principle not confined to past instances." *Id.* at 174, 95 L. Ed. at 855. Because the statutory procedures for placing an individual on the RIL deprive individuals of due

**IN RE D.W.**

[202 N.C. App. 624 (2010)]

process, they are unconstitutional under the North Carolina Constitution. Accordingly, the orders of the trial court are reversed.

REVERSED.

Judges HUNTER, JR. and BEASLEY concur.