OPINION OF THE COURT
 

 Ciparick, J.
 

 Does an individual convicted of a sex offense have a constitutional right to notice and an opportunity to be heard before being classified as a sexually violent predator under the Sex Offender Registration Act (SORA) — New York’s “Megan’s Law?” In the case before us, we hold that procedural due process requires that this defendant, on probation when SORA went into effect, should have received notice and an opportunity to be heard before his SORA risk level determination was made.
 

 
 *134
 
 I
 

 Defendant David W. appeals from his conviction, after a jury trial in Justice Court in November 1997, of failing to register as a sex offender under the SORA (Correction Law § 168-g [2]; § 168-t). The duty to register was based on defendant’s judgment of conviction in Supreme Court in May 1995 upon his plea of guilty to charges of sodomy in the second degree and sexual abuse in the first degree. These charges arose out of defendant’s sexual contact with two underage victims. Having served his concurrent 90-day jail sentences for these crimes, defendant had yet to complete his five-year term of probation when SORA went into effect on January 21, 1996. As a result, defendant was required to register as a sex offender (Correction Law §§ 168-a, 168-g). His probation officer sent defendant a letter informing him of this obligation along with a “Sex Offender Registration Form,” a “Risk Assessment Instrument” and a “Notice of Risk Level Assessment.”
 

 These documents notified defendant that he had been assigned a risk level determination of “3,” indicating that he represented the highest risk under SORA and was a “sexually violent predator” (Correction Law § 168-Z [6] [c]). A level three designation permits a law enforcement agency having jurisdiction to distribute “the sex offender’s name, exact address, a photograph of the offender, background information including the offender’s crime of conviction, modus of operation, type of victim” and any other conditions imposed on the offender to “vulnerable populations”
 
 (id.).
 
 Those receiving this information are at liberty to further disseminate this information “at their discretion”
 
 (id.).
 
 Risk level three designees also are subject to registration requirements for a minimum of 10 years and must verify their address and registration information every 90 days with local law enforcement (Correction Law § 168-d [3]; § 168-f [3]; § 168-h), while those at risk level one or two must register annually for 10 years (Correction Law § 168-f [2]; § 168-h).
 

 On advice of counsel, defendant refused to sign and return the sex offender registration notice classifying him at risk level three. At no time before the risk level determination did defendant receive notice that a determination was being made, he was not notified of the information relied upon to make the determination, nor did he receive a hearing or any opportunity to be heard. Instead, the initial determination was made by an employee of the Division of Probation and Correctional Alternatives (DPCA) pursuant to Correction Law § 168-g. In this case,
 
 *135
 
 the determination was made by an employee of the Suffolk County Probation Department, who had received one day of training in the guidelines established by the Board of Examiners of Sex Offenders. The Board’s Risk Assessment Guidelines provide an explanation of the various characteristics to be examined by those filling out the “Risk Assessment Instrument.”
 

 The “Risk Assessment Instrument” is a chart divided into four risk factors: current offense(s); criminal history; post-offense behavior; and release environment
 
 (see,
 
 Correction Law § 168-/). Within each of these factors, there are several specific issues that a probation officer must analyze, and depending on whether defendant or his conduct exhibits certain characteristics, points are assigned. When totaled, the points for all risk factors determine an individual’s presumptive SORA risk level, except that there are certain “overrides” not relied on by the Probation Department here, which will result in the offender being classified as a risk level three. According to the DPCA, the presumptive SORA risk level is reviewed by another employee of DPCA or, as here, by one member of the Board of Examiners of Sex Offenders before the final risk level determination is sent to the probationer.
 

 Defendant received 125 points, which placed him above the 110 point threshold for a sexually violent predator, and thus was determined to be a risk level three. Although no statute or regulation provides for it, the Notice of Risk Level Assessment offered defendant the opportunity to seek review of the determination with DPCA. Defendant took advantage of this review, and challenged his risk level classification and DPCA’s characterization of the offenses. Specifically, he disputed the points assigned regarding “the allegation of forcible compulsion [10], the relationship with the victim [20] and the acceptance of responsibility [10].” Without explicitly addressing these objections or identifying the information upon which the challenged factors were analyzed, the DPCA sent a letter to defendant stating that the level three determination had been correctly made.
 

 Upon refusal to sign the form classifying him as a sexually violent predator, defendant was charged with failure to register under Correction Law §§ 168-g and 168-t. Defendant moved to dismiss the information charging him with failure to register on the grounds that SORA violated the ex post facto, equal protection and due process guarantees of the United States and New York Constitutions. The Justice Court rejected these
 
 *136
 
 challenges, and after the trial, sentenced defendant to a term of one year of imprisonment.
 
 [1]
 
 The Appellate Term affirmed and rejected defendant’s ex post facto and equal protection challenges. Regarding defendant’s due process claims, the Appellate Term held that SORA’s provision allowing a sex offender to petition the sentencing court for relief from the further duty to register (Correction Law § 168-g [4]; § 168-o) and the availability of an article 78 proceeding to review DPCA’s determination “effectively minimized the risk of an erroneous deprivation of defendant’s private interest.”
 
 [2]
 

 A Judge of this Court having granted defendant leave to appeal, defendant presses only his claims of due process and equal protection violations. Concluding that defendant was not afforded the process he was due in determining his SORA risk level, we reverse and reach no other issue.
 

 II
 

 The commonsense principle at the heart of the due process guarantees in the United States and New York Constitutions is that when the State seeks to take life, liberty or property from an individual, the State must provide effective procedures that guard against an erroneous deprivation (US Const, Amend XIV, § 1; NY Const, art I, § 6;
 
 Mathews v Eldridge,
 
 424 US 319, 334-335;
 
 Wisconsin v Constantineau,
 
 400 US 433, 436 [“(I)t is procedure that marks much of the difference between rule by law and rule by fiat”]). Due process, however, is a flexible concept that
 

 “generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural
 
 *137
 
 requirement would entail.”
 
 (Mathews v Eldridge, supra,
 
 at 335.)
 

 Here, the procedures that the State has employed are inadequate to mitigate the risk of an erroneous determination that a sex offender on probation is a sexually violent predator.
 

 Defendant’s private interest, his liberty interest in not being stigmatized as a sexually violent predator, is substantial
 
 (see, E.B. v Verniero,
 
 119 F3d 1077, 1107 [3d Cir];
 
 Doe v Pataki,
 
 3 F Supp 2d 456, 469 [SD NY]). The ramifications of being classified and having that information disseminated fall squarely within those cases that recognize a liberty interest where there is some stigma to one’s good name, reputation or integrity, coupled with some more “tangible” interest that is affected or a legal right that is altered
 
 (Matter of Lee TT. v Dowling,
 
 87 NY2d 699, 708 [placing petitioners’ names on Central Register of Child Abuse and Maltreatment foreclosed future child care employment and satisfied “stigma plus” test];
 
 see, Paul v Davis,
 
 424 US 693;
 
 Wisconsin v Constantineau, supra,
 
 at 437;
 
 Valmonte v Bane,
 
 18 F3d 992). More than “name calling by public officials,” the sexually violent predator label “is a determination of status” that can have a considerable adverse impact on an individual’s ability to live in a community and obtain or maintain employment
 
 (see, Paul v Davis, supra,
 
 at 703 [internal quotations omitted]). A level three classification imposes significant burdens. Not only is one identified as a “sexually violent predator,” but also this information along with the individual’s name and “exact” address can be widely disseminated to and by any “entity with vulnerable populations related to the nature of the offense committed by such sex offender” (Correction Law § 168-Z [6] [c]). Additionally, a level three sex offender must by photograph, description and exact address, along with other identifying information, appear in a “sexually violent predator subdirectory,” which is annually “distributed to the offices of local village, town, city, county or state law enforcement agencies for purposes of public access,” and is updated monthly (Correction Law § 168-q [1];
 
 see,
 
 L 1999, ch 453, § 19). This information also appears in a telephone database accessible by a “900” telephone number (Correction Law § 168-p). Moreover, SORA places affirmative obligations on all sex offenders to register annually with local law enforcement and to promptly advise of changes in address (Correction Law §§ 168-f, 168-j, 168-k). Those classified at risk level three must also register every 90 days.
 

 This Court has held that the mere likelihood of dissemination to prospective employers of allegations of rape and abuse
 
 *138
 
 in a fired public employee’s personnel file sufficiently impaired that employee’s liberty interest to warrant due process protections
 
 (Matter of Swinton v Safir,
 
 93 NY2d 758, 764). Given the significantly greater effect of a risk level three determination, we are persuaded that it implicated defendant’s liberty interest and triggered due process safeguards
 
 (see, Board of Regents of State Colls, v Roth,
 
 408 US 564, 570-571).
 

 ra
 

 Under the second prong of the
 
 Mathews
 
 analysis, the procedures in place for this probationer-defendant, however, do not sufficiently prevent “the risk of an erroneous deprivation of [defendant’s] interest”
 
 (Mathews v Eldridge, supra,
 
 424 US, at 335). The bedrock of due process is notice and opportunity to be heard
 
 (id.,
 
 at 333;
 
 see, Goldberg v Kelly,
 
 397 US 254, 265-268;
 
 Mullane v Central Hanover Bank & Trust Co.,
 
 339 US 306, 314;
 
 Matter of LaCorte Elec. Constr. & Maintenance v County of Rensselaer,
 
 80 NY2d 232, 237). Yet defendant was afforded no meaningful opportunity to contest his initial risk level determination. Defendant did not receive notice that his risk level was being determined, was not informed of what materials would be relied upon in making that determination and was not afforded an opportunity to present his objections to the State’s characterization of his behavior and history before the key decision was unilaterally made.
 

 The process afforded offenders, like defendant, who were serving a sentence of probation when SORA took effect, stands in stark contrast to that provided sex offenders still in custody. For offenders still in custody, the sentencing court makes the risk level determination after receiving a recommendation from the Board (Correction Law § 168-n [1], [2]). In making the determination, the court must consider the victim’s statement, allow the offender to appear and be heard and, if necessary, inform the sex offender of the right to have counsel appointed (Correction Law § 168-n [3]).
 

 The Legislature attempted to provide streamlined procedures in determining SORA risk levels for those already on probation because the danger of a repeat sex offense is most acute with those who have been released to the community. In providing a quicker method of determining risk level for probationers, the Legislature was attempting to fulfill expeditiously SORA’s purpose of aiding law enforcement in investigating sex offenses and notifying vulnerable populations of a possible threat. However, in this case, the efficiency of streamlined classifica
 
 *139
 
 tion procedures for probationers runs into constitutional due process impediments
 
 (see, Goss v Lopez,
 
 419 US 565, 580). Under the third prong of the
 
 Mathews
 
 analysis, the fiscal and administrative burdens imposed by requiring notice and opportunity to be heard are not prohibitive and are not so significant as to warrant limiting defendant to the procedures the Legislature provided
 
 (Fuentes v Shevin,
 
 407 US 67, 90, n 22;
 
 see, Goldberg v Kelly, supra,
 
 at 261). The need for expediency cannot overshadow the fact that a critical decision was being made about defendant that determined his potential to commit further sex offenses, the extent to which he would have to register, and the extent to which his personal information and propensity for committing sex offenses could be distributed to his community
 
 (see, Doe v Poritz,
 
 142 NJ 1, 105-108, 662 A2d 367, 420-421). Indeed, the Legislature, recognizing the significance of the risk level decision, provided a panoply of procedures to those still serving their prison sentences
 
 (see,
 
 Correction Law §§ 168-l, 168-n).
 

 IV
 

 The review procedures provided to defendant here do not bridge the due process gap. DPCA’s internal review of the risk level determination is inadequate. Significantly, no statute, regulation or guideline provides for it, and presumably the risk level review process is subject to instant change or abandonment. As demonstrated by the facts of this case, the review process did not provide defendant with any meaningful way to voice his objections since defendant was not provided a hearing or any opportunity to present evidence.
 

 Even if defendant could also seek judicial review of DPCA’s determination in a CPLR article 78 proceeding — this Court has not addressed the availability of such review, and we do not decide that issue today
 
 [3]
 
 — that review would not be meaningful since the basis for DPCA’s initial assessment of a sex offender, at least with regard to some categories on the risk assessment instrument, remains unilateral. The deferential standard of review accorded administrative determinations in article 78
 
 *140
 
 proceedings presupposes administrative procedures that conform with due process requirements
 
 (see, Lutheran Church v City of New York,
 
 35 NY2d 121;
 
 Matter of Pell v Board of Educ.,
 
 34 NY2d 222;
 
 Matter of Sullivan County Harness Racing Assn. v Glasser,
 
 30 NY2d 269). Here, not only were DPCA’s conclusions untested, but there is no record to permit adequate judicial review, nor was defendant given any reasonable opportunity to create one.
 

 Furthermore, the right to petition the sentencing court to be “relieved of any
 
 further
 
 duty to register” under Correction Law § 168-o (1) (emphasis added) does not permit the court to review the correctness of the
 
 initial
 
 risk level determination
 
 (see,
 
 Correction Law § 168-g [4]). In using the words “relieved” and “further” the Legislature indicated that this section was to be used after the SORA risk level determination had been in place along with all the adverse consequences of that risk level imposed on the sex offender. The ability to make
 
 future
 
 modifications to the duty to register differs from the procedures that go into making the original risk level determination. Correction Law § 168-o fails to guard against an erroneous original risk level classification because it does not provide a vehicle for reviewing whether defendant’s circumstances were properly analyzed in the first instance to arrive at his risk level. The right to petition the sentencing court is not a substitute for an initial due process hearing because the defendant bears the burden of proving by “clear and convincing” evidence that his risk level should be modified (Correction Law § 168-o [2]). Due process requires that the State bear the burden of proving, at some meaningful time, that a defendant deserves the classification assigned. Here, the State did not bear the burden of proof at any proceeding before a neutral fact finder.
 

 Defendant may or may not deserve a risk level three classification, but without any notice and an opportunity to be heard before a determination is made, the risk level determination made below failed to comport with minimum State and Federal constitutional requirements of due process.
 

 Accordingly, the order of the Appellate Term should be reversed and defendant’s motion to dismiss the information granted.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Levine, Wesley and Rosenblatt concur.
 

 Order reversed, etc.
 

 [1]
 

 . By virtue of bis conviction for failure to register under SORA, defendant was also held to have violated his probation and was sentenced in Supreme Court to one year of imprisonment to run concurrently with the sentence imposed in Justice Court. Issues regarding the violation of probation are not before us on this appeal.
 

 [2]
 

 . Defendant, after conviction, petitioned the sentencing court for relief from the farther duty to register under Correction Law § 168-0, but the court denied this petition.
 

 [3]
 

 . We note that a recent amendment to SORA gives sex offenders the right to appeal their risk level determinations pursuant to CPLR articles 55, 56, and 57, but neither party contends that this provision could apply to defendant (L 1999, ch 453, §§ 6, 29;
 
 see also, People v Kearns,
 
 95 NY2d 816 [decided today] [holding as a matter of statutory law that the risk level determination is not appealable in the direct appeal from a criminal conviction]).