■ The People of the State of New York, Respondent, v Steven Lashway, Appellant. [977 NYS2d 491]—

Stein, J. Appeal from an order of the County Court of Clinton County (McGill, J.), entered May 10, 2012, which denied defendant's application pursuant to Correction Law § 168-*o* (2) for, among other things, reclassification of his risk level sex offender status.

In 1990, defendant was convicted of three counts of rape in the second degree and was sentenced to 10½ to 21 years in prison as a second felony offender (*People v Lashway*, 187 AD2d

747 [1992], *lv denied* 81 NY2d 842 [1993]). In 2004, prior to his release from prison, defendant was designated as a risk level III sex offender under the Sex Offender Registration Act (*see* Correction Law art 6-C [hereinafter SORA]). He thereafter violated parole and was returned to prison. In June 2010, defendant applied to County Court for a modification of his risk level classification pursuant to Correction Law § 168-*o*. After obtaining an updated recommendation from the Board of Examiners of Sex Offenders, County Court denied defendant's request, without conducting a hearing. On appeal, this Court found that defendant was entitled to a hearing and remitted the matter to County Court for further proceedings (90 AD3d 1178 [2011], *lv dismissed* 18 NY3d 945 [2012]). County Court thereafter received another updated recommendation from the Board and, following a hearing, once again denied defendant's application. Defendant now appeals and we affirm.

Correction Law § 168-*o* (2) provides a sex offender who is required to register pursuant to SORA with the opportunity to periodically seek a downward modification of his or her risk level classification. However, the burden falls upon the sex offender to establish by clear and convincing evidence that a modification is warranted (*see* Correction Law § 168-*o* [2]), and the trial court's determination will not be disturbed absent an abuse of discretion (*see People v Wright*, 78 AD3d 1437, 1438 [2010]). Here, in support of his application for a modification to risk level II, defendant argued that (1) he did not pose a danger to society because of his deteriorating health, (2) he had completed various programs while incarcerated including, among others, a sex offender treatment program, (3) his instant offenses did not involve the use of force, (4) he had not committed a sex offense in more than two decades, and (5) his current risk level assessment makes him a target of harassment and assaults while incarcerated. None of these claims is persuasive.

It is significant to note that the 2004 risk assessment instrument applied a presumptive "override" to risk level III based upon defendant's prior felony conviction for a sex crime (*see* Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 3-4 [2006]). In addition, since the time of his classification, defendant was found to have a mental abnormality as defined in the Sex Offender Management and Treatment Act (*see* Mental Hygiene Law art 10) and was confined to a psychiatric center. While so confined, defendant violated his parole by assaulting a staff member at a state facility, which led to his reincarceration. This undercuts his claim that his physical ailments prevent him from being a risk to the community. More-

over, the record reflects that, during his incarceration, defendant was charged with multiple disciplinary infractions and was discharged from institutional programs due to poor participation. Under these circumstances, we cannot conclude that County Court's denial of defendant's application for a downward modification was an abuse of that court's discretion.

Defendant's claim that County Court erred by denying his request to adjourn the hearing is similarly unavailing. Shortly before the hearing, defendant submitted to County Court a proposed order requiring, as pertinent here, that the Clinton County District Attorney's office and the Board show cause why the Board should not be directed to deliver to the court on the date of the risk level modification hearing certified copies of all documents that the Board listed in its July 2010 and March 2012 updated recommendations. The Board provided the vast majority of the documents sought within approximately one week of its receipt of the order to show cause and six days prior to the hearing[1] and explained that the remainder of the documents were in a file that had to be retrieved from a storage facility, which might take several weeks. This explanation was not disputed by defendant. However, when defendant appeared for the hearing, he requested an adjournment pending his receipt of the remaining documents,[2] which County Court denied.

Defendant argues, and the dissent agrees, that because he was not provided with all of the requested documents prior to the hearing, he was unable to controvert the evidence relied upon by the Board in making its updated recommendation. However, we note that the Board's recommendation merely listed the subject documents as having been "reviewed" by the Board; the Board did not explicitly rely on them or even mention their contents in setting forth the basis for its recommendation. More significantly, County Court was not bound by the Board's recommendation as to whether to modify defendant's risk assessment level (*see generally Matter of VanDover v Czajka*, 276 AD2d 945, 946 [2000]; *Matter of New York State Bd. of Examiners of Sex Offenders v Ransom*, 249 AD2d 891, 892 [1998]), and there is no evidence—nor does defendant argue—that County Court was in possession of, let alone considered,

---

1. While the record reflects that County Court signed the order to show cause, it is bereft of any indication that the court rendered a decision or order thereon. However, it appears that the Board treated the order to show cause as a subpoena.

2. Although defendant does not itemize the documents that he did not receive, it appears—based upon the record before us—that the only two documents at issue are a July 2010 email correspondence with the Division of Parole and a July 2010 email correspondence with the Attorney General's office.

the subject documents in making its determination.[3] Instead, the court based its denial of defendant's application on the finding that defendant had a mental abnormality, his violation of parole, his assaultive behavior while in custody and the presumptive override resulting from his prior felony conviction of a sex crime. Stated otherwise, County Court determined that defendant failed to meet his burden of establishing by clear and convincing evidence that the claims made in his application warranted a modification of his risk assessment level.

We do not take issue with the argument that defendant was entitled to discovery of the materials in question. However, all discovery is subject to certain limitations and the court has "considerable discretion to supervise the discovery process" (*Kropp v Town of Shandaken*, 91 AD3d 1087, 1092 [2012] [internal quotation marks and citation omitted]). In our view, the question before us distills to whether County Court abused its discretion in refusing to adjourn the hearing in order for defendant to belatedly gain access to the requested documents. In this regard, County Court's decision to deny defendant's request must be evaluated with full consideration of the attendant circumstances before the court, including the timeliness thereof (*see generally People v Peterkin*, 81 AD3d 1358, 1359 [2011], *lv denied* 17 NY3d 799 [2011]), and we cannot agree that reversal is required based solely on the fact that defendant did not obtain the requested materials prior to the hearing.

Significantly, the documents at issue were referenced in the Board's July 2010 updated recommendation, of which defendant had possession since August 2010. In January 2012, one month after this Court held that defendant was entitled to a hearing, County Court appointed counsel for defendant and directed the Board to complete a second updated recommendation. Nonetheless, defendant waited until April 2012—only a few weeks before the scheduled hearing—to request the materials, and it was not until the actual day of the hearing that defendant's counsel brought to County Court's attention that all of the documents had not been provided and requested an adjournment. We can discern no reasonable excuse for defendant's protracted delay in seeking the documents. The position

---

**3.** The dissent accurately notes that County Court indicated that it reviewed the evidence before it, which would include the Board's updated recommendation. However, in both its oral and written decisions, County Court expressly enumerated the facts upon which it relied in determining that a modification was not warranted—all of which defendant had an opportunity to challenge—and there is no question that the court reached its own conclusion based upon facts and circumstances in the record separate and apart from the Board's recommendations.

advanced by defendant and accepted by the dissent—that County Court was obligated to ignore this delay and adjourn the hearing—unduly subverts the court's discretion in evaluating adjournment requests.

We disagree with the dissent's conclusion that County Court's denial of defendant's adjournment request operated to deprive him of due process. In an initial SORA determination, the burden is on the People to establish the facts supporting the appropriate risk level (*see* Correction Law § 168-n [3]). The specific requirements necessary to satisfy a defendant's due process rights in that context are well established (*see Doe v Pataki*, 3 F Supp 2d 456, 471-472 [1998]; *People v Gutierrez-Lucero*, 103 AD3d 89, 98 [2012], *lv dismissed*, 20 NY3d 1094 [2013]; *see also* Correction Law § 168-n [3]). However, the instant proceeding was a reclassification proceeding, in which the initial burden was placed upon defendant to set forth facts supporting his modification application (*see* Correction Law § 168-*o* [2]). Due process is "a flexible concept" (*People v David W.*, 95 NY2d 130, 136 [2000]) and a defendant's due process rights in this context are similar, but not identical to, the rights of a defendant in an initial risk assessment (*see* Correction Law § 168-*o* [4]; *see also People v Lashway*, 90 AD3d 1178, 1178 [2011], *lv dismissed* 18 NY3d 945 [2012]). Here, County Court complied with the statutory requirements and defendant was neither denied the ability to offer relevant materials in support of his application nor prevented from defending himself against any evidence or documentation relied upon by County Court in deciding such application.[4]

In light of the foregoing, and particularly considering the overwhelming evidence in the record mitigating against a modification, we find that County Court did not abuse its discretion by denying defendant's request for an adjournment of the hearing under the circumstances here (*see People v Rodriguez*, 102 AD3d 457, 457 [2013], *affd* 21 NY3d 1030 [2013]; *People v Santiago*, 89 AD3d 911, 911 [2011], *lv denied* 18 NY3d 806 [2012]; *People v Di John*, 48 AD3d 1302, 1303 [2008]). To the extent not specifically addressed herein, defendant's remaining claims have been considered and found to be either unpreserved or lacking in merit.

Peters, P.J., and McCarthy, J., concur.

Spain, J. (dissenting). Because I find that defendant was deprived of due process of law by County Court's failure to

---

4. We further note that defendant may make a new application for reclassification (*see* Correction Law § 168-*o* [2]) and, if desired, may obtain the omitted information in connection therewith.

abide defendant's motion, made prior to his reclassification hearing, for access to copies of all of the records that the Board of Examiners of Sex Offenders reviewed and listed in making its updated recommendations strongly opposing his request for a downward reclassification of his risk level classification, I would reverse the denial defendant's application to modify his classification and remit for a rehearing. Accordingly, while expressing no opinion on the merits of defendant's application for reclassification, I respectfully dissent.

Unlike the initial sex offender classification, for which the People bear the burden of proof (*see* Correction Law § 168-n [3]; *People v Parker*, 62 AD3d 1195, 1196 [2009], *lv denied* 13 NY3d 704 [2009]), it is the defendant who "bear[s] the burden of proving the facts supporting the requested modification by clear and convincing evidence" (Correction Law § 168-*o* [2]). Under the Sex Offender Registration Act (*see* Correction Law art 6-C [hereinafter SORA]), the Board "is charged with the responsibility of making a recommendation to the sentencing court concerning a sex offender's risk of recommitting a sexual offense based upon certain guidelines" (*Matter of VanDover v Czajka*, 276 AD2d 945, 946 [2000]; *see* Correction Law § 168-*l* [6]). The Board is similarly required to provide an updated report, upon request of the sentencing court, to aid in its resolution of petitions under Correction Law § 168-*o* to modify a classification (*see* Correction Law §§ 168-*l* [7]; 168-*o* [4]). While the sentencing court, of course, "is not bound by the recommendation of the Board and, in the exercise of its discretion, may depart from that recommendation and determine the sex offender's risk level based upon the facts and circumstances that appear in the record" (*Matter of New York State Bd. of Examiners of Sex Offenders v Ransom*, 249 AD2d 891, 891-892 [1998]; *see People v Douglas*, 18 AD3d 967, 968 [2005], *lv denied* 5 NY3d 710 [2005]), in practice, the Board's recommendation is often among the most influential factors considered by a sentencing court in making its classification determination. Thus, in order to attempt to persuade the court and meet its burden of proof on a petition for reclassification, the defense will frequently focus its challenge on the underlying basis for the Board's adverse recommendation.

Here, despite an uncontested prehearing request for materials listed by the Board in its update, defendant was not afforded access to two of the seven documents listed in the Board's 2012 updated recommendation against reclassification. While SORA is essentially civil in nature (*see People v Pettigrew*, 14 NY3d 406, 408 [2010]), falling somewhere between a criminal proceed-

ing and an administrative one (*see Doe v Pataki*, 3 F Supp 2d 456, 470 [SD NY 1998]), "a 'SORA determination undeniably has a profound impact on a defendant's liberty interest' " (*People v Gutierrez-Lucero*, 103 AD3d 89, 98 [2012], *lv dismissed* 20 NY3d 1094 [2013], quoting *People v Brooks*, 308 AD2d 99, 105 [2003], *lv denied* 1 NY3d 502 [2003]; *see People v David W.*, 95 NY2d 130, 137 [2000]; *Doe v Pataki*, 3 F Supp 2d at 466-468, 469-470). As with an initial determination, prior to which defendant is entitled to prehearing discovery (*see* Correction Law § 168-n [3]), I believe that principles of due process require that he be afforded access—through prehearing discovery—to all material considered on or influencing his reclassification petition (*see* Correction Law § 168-n [3]). Defendant's right to submit "any information relevant to the review" of his reclassification request (Correction Law 168-*o* [4]) would, in many cases, be rendered meaningless if he were not entitled to review and address all materials considered by the Board. In my view, depriving defendant of access to all records reviewed and listed by the Board in making its reclassification recommendation constituted, by any measure, a deprivation of defendant's important right to discovery of "all matter material and necessary" to his reclassification petition (CPLR 3101 [a]). It also deprived him of his important due process right to discover, confront and respond to all material that may have influenced the Board's recommendation, on which the court expressly relied (*see People v David W.*, 95 NY2d at 137-138; *Doe v Pataki*, 3 F Supp 2d at 472-477). I do not find it to be dispositive that the court itself did not possess or rely upon the withheld materials, given that the court did expressly rely on the Board's recommendation, which did consider the materials.

Finally, under Correction Law § 168-m, which requires disclosure to the Board of myriad "relevant information pertaining to a sex offender" to assist in the Board's mandatory recommendation in an initial classification proceeding, allowance is made for the "[B]oard's file" to be sealed; it also provides, among other things, that "in any subsequent proceeding in which the sex offender who is the subject of the sealed record is a party and which requires the [B]oard to provide a recommendation to the court pursuant to this article"—presumably including reclassification petition proceedings, as here—"such sealed record shall be available to the sex offender." The clear import of that provision is that a sex offender, such as defendant herein, is entitled, in all SORA proceedings, to discovery of and access to materials in the Board's file that may have influenced its penultimate recommendation. Moreover, "[t]he need for expediency cannot overshadow the fact that a critical

decision was being made about defendant [under SORA]" (*People v David W.*, 95 NY2d at 139). Therefore, I find that County Court abused its discretion in refusing to grant defendant an adjournment so that the requested documents could be obtained, which denial operated to deprive him of a fair hearing (*cf. People v Warren*, 42 AD3d 593, 594 [2007], *lv denied* 9 NY3d 810 [2007]). While it may be debatable whether the denial of this material operated to affect the court's ultimate determination, given our inability to review the materials, which are not in the record, and the highly discretionary nature of these decisions, I cannot agree that the error was harmless or overlook the deleterious precedential value of an affirmance in this case.

Ordered that the order is affirmed, without costs.