People v Davis (2019 NY Slip Op 08720)





People v Davis


2019 NY Slip Op 08720


Decided on December 4, 2019


Appellate Division, Second Department


Austin, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 4, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
JEFFREY A. COHEN
VALERIE BRATHWAITE NELSON
ANGELA G. IANNACCI, JJ.


2018-04419

[*1]People of State of New York, respondent,
v
William Davis, appellant.



APPEAL by the defendant from an order of the Supreme Court (Marcia P. Hirsch, J.), dated March 7, 2018, and entered in Queens County, which granted his petition pursuant to Correction Law § 168-o(2) for a downward modification of his risk level classification from level three to level one under Correction Law article 6-C only to the extent of designating him a level two sex offender.



Janet E. Sabel, New York, NY (Justine M. Luongo and William B. Carney of counsel), for appellant.
John M. Ryan, Acting District Attorney, Kew Gardens, NY (John M. Castellano, Johnnette Traill, Ellen C. Abbot, and Eugene J. Dirks of counsel), for respondent.



AUSTIN, J.P.


OPINION & ORDER
On this appeal, we are asked to determine whether a previously adjudicated level three sex offender has established, by clear and convincing evidence, that a downward modification of that status to a level one is appropriate. Based upon the circumstances of this case, we respond in the affirmative and modify the order of the Supreme Court accordingly.
I. Background
In 1983, after a trial, the defendant, then 30 years old, was convicted of sodomy in the first degree,[FN1] sexual abuse in the first degree, and unlawful imprisonment in the first degree, and was sentenced to an aggregate term of imprisonment of 12½ to 25 years. After serving 17 years of his sentence, upon his release from prison in January 2000, the defendant served 8 years of parole.
At the time of the defendant's release from prison, pursuant to the Sex Offender Registration Act (see Correction Law art 6-C; hereinafter SORA), a hearing was held to determine the defendant's sex offender risk level classification. At the hearing, the defendant's counsel disputed the number of points assessed against the defendant with respect to his relationship with the victim and whether the defendant accepted responsibility for his crimes, maintaining that the number of points that should have been assessed against the defendant placed him in the level two category. Despite defense counsel's argument, the SORA hearing court designated the defendant a level three sex offender pursuant to Correction Law article 6-C.[FN2]
In October 2017, the defendant petitioned pursuant to Correction Law § 168-o(2) for a downward modification of his risk level classification from level three to level one. The Board of [*2]Examiners of Sex Offenders (hereinafter the Board) and the prosecution did not oppose the reclassification of the defendant's risk level designation to level two, but opposed a further reduction to level one.
In an order dated March 7, 2018, the Supreme Court, after a hearing, granted the defendant's petition only to the extent of reclassifying him a level two sex offender. The defendant appeals.
II. Contentions on Appeal
The defendant argues that, based upon his sobriety, his cooperation with and successful completion of his rehabilitation while in prison and on parole, his age and poor health, his marriage and strong family support, his community and church involvement, and the lack of any criminal involvement since his release from prison, he established, by clear and convincing evidence, that he is not likely to reoffend. He maintains that, as a result, he should have been reclassified as a level one sex offender.
In response, the People address each of the defendant's claimed positive
improvements in his life and cite to cases which suggest that individually, such attributes are insufficient to justify a downward modification of the defendant's sex offender status. The People claim that the defendant failed to meet his burden for a further downward modification by clear and convincing evidence. The People also argue that the nature of the defendant's criminal history, including the conviction in 1983 for the sexual assault at gunpoint of the 17-year old victim, then 12 years his junior, and earlier sex-based crimes, warranted the denial of the petition beyond the downward modification to level two granted by the Supreme Court.
In reply, the defendant points to the People's acceptance as true of all of the factual assertions he presented to the SORA court, which found such proof to constitute clear and convincing evidence to warrant a downward modification, albeit only to a risk level two sex offender. The defendant maintains that the People do not attempt to argue that he is at risk to re-offend and solely focus on the nature of the crime he committed in 1983, as well as the nature of those crimes committed earlier.
III. Sex Offender Registration Act
The objective of SORA is to evaluate a particular sex offender's risk of reoffense once he or she is released back into the community so that appropriate supervision and notification can be achieved (see People v Mingo, 12 NY3d 563, 570-571). "SORA is not a penal statute and the registration requirement is not a criminal sentence. Rather than imposing punishment for a past crime, SORA is a remedial statute intended to prevent future crime'" (People v Gravino, 14 NY3d 546, 556 [emphasis omitted], quoting Matter of North v Board of Examiners of Sex Offenders of State of N.Y., 8 NY3d 745, 752). SORA is "designed not to punish, but rather to protect the public" (People v Windham, 10 NY3d 801, 802; see People v Gravino, 14 NY3d at 556; People v Szwalla, 61 AD3d 1289, 1290 [SORA "does not impose punishment, but is a civil statute aimed at prevention of crime and protection of the public"]).
Initially, when a defendant is designated a certain risk level, the SORA Guidelines and the risk level ascribed to a sex offender are "merely presumptive" (People v Mingo, 12 NY3d at 568 n 2) based on the risk assessment instrument (hereinafter RAI), which assigns point values to various risk factors set forth in the Board's Sex Offender Registration Act: Risk Assessment Guidelines and Commentary (2006; hereinafter Guidelines; see Guidelines at 1). This allows the SORA court the discretion, in the first instance to depart from the numerical score and assign a sex
offender level appropriate to the evidence presented "if it concludes that the factors in the RAI do not result in an appropriate designation" (People v Mingo, 12 NY3d at 568 n 2; see People v Gillotti, 23 NY3d 841, 861; People v Wyatt, 89 AD3d 112, 119-120).
"Pursuant to Correction Law § 168-o(2), a sex offender required to register under [SORA] (Correction Law § 168 et seq.) is permitted to petition annually for modification of his or her risk level classification" (People v Springs, 162 AD3d 917, 918; see Correction Law § 168-o[2]; People v Lashway, 25 NY3d 478, 483). The petition "shall set forth the level of notification sought, together with the reasons for seeking such determination" (Correction Law § 168-o[2]). In such circumstance, "[t]he sex offender shall bear the burden of proving the facts supporting the requested modification by clear and convincing evidence" (id.; see People v Lashway, 25 NY3d at 483; People v Springs, 162 AD3d at 918; People v Wyatt, 89 AD3d at 118).
"Upon receipt of a petition [for a downward modification], the court shall forward a copy of the petition to the [B]oard and request an updated recommendation pertaining to the sex [*3]offender and shall provide a copy of the petition to the other party" (Correction Law § 168-o[4]). "[T]he [B]oard shall provide an updated report pertaining to the sex offender petitioning for relief of the duty to register or for a modification of his or her level of notification" (Correction Law § 168-l[7]). After the court provides copies of the Board's updated recommendation to the defendant and to the People at least 30 days prior to rendering a determination on the modification petition, upon reviewing the Board's recommendation and any relevant materials and evidence submitted by the defendant and the People, "the court may grant or deny the petition" (Correction Law § 168-o[4]). "The court ultimately determines a petitioner's SORA risk level, and is not bound by the Board's recommendation, from which it may depart in considering the record" (People v Lashway, 25 NY3d at 483, citing Correction Law § 168-n[2], [3]).
Correction Law § 168-o "does not provide a vehicle for reviewing whether [a] defendant's circumstances were properly analyzed in the first instance to arrive at his [or her] risk level" (People v David W., 95 NY2d 130, 140). "Rather, the relevant inquiry regarding Correction Law § 168-o(2) applications is whether conditions have changed subsequent to the initial risk level determination warranting a modification thereof" (People v Anthony, 171 AD3d 1412, 1413). However, just as when the initial designation is made, "[a] careful reading of [Correction Law § 168-l] supports the conclusion that the guidelines should eschew per se rules and that risk should be assessed on the basis of a review of all pertinent factors" (Guidelines at 2, citing Correction Law §
168-l[5], [6]), the same rationale should be utilized when a petition for a modification is presented to the court. Consequently, an individualized approach is necessary to properly and fairly evaluate applications not only for an initial downward departure, but also for those seeking subsequent modifications in the classification of a sex offender's designated risk level. The objective numerical scores assigned to the various categories in an RAI, prepared in the first instance or upon an update, were not intended to be the only means of evaluating a defendant's likelihood of recidivism.
IV. The Subject Petition
In support of his petition for a downward modification, the defendant introduced uncontroverted evidence that he was 64 years old at the time his petition was filed and that he has not been charged with or convicted of any subsequent crimes, including any sex offenses, since his release from prison in 2000 or his discharge from parole in 2008. The defendant also submitted evidence, through, inter alia, his correctional facilities' records, that, while incarcerated, he became sober through his participation in various drug and alcohol rehabilitation programs despite a history of alcohol and marijuana use starting as early as 8 or 9 years old followed by the use of cocaine and other drugs by age 10 or 11. He also participated in various sex offender treatment programs while imprisoned. Since his release from prison, he successfully completed parole supervision, which included eight additional years of both group and private sex offender treatment and therapy. A licensed certified social worker who had privately treated the defendant for a period of time submitted a letter documenting the defendant's treatment and opining that he did not believe that the defendant would reoffend.
The defendant, who has been married since 2003, has strong family ties, is actively involved as a deacon in his church, where his father is the pastor, and is a member of its trustee board. The defendant's wife, who has known the defendant since 1974, took the defendant's daughter to visit him while he was incarcerated, and began residing with him shortly after his release from prison, provided a letter of support in favor of the petition to the court. The defendant's wife explained that she was aware of the defendant's criminal history and his SORA status.
The defendant has continuously worked at the same job since 2004 despite qualifying for social security disability benefits and retirement. Along with documentation verifying his salary, the defendant provided a letter from his managing director, who confirmed the defendant's employment and described the defendant as a model employee who was honest and trustworthy.
Moreover, the defendant demonstrated that, among other illnesses, he is an insulin-dependent diabetic and that this condition has caused renal failure requiring five-hour hemodialysis sessions three times a week, the loss of a toe, and erectile dysfunction. As a result of his medical condition, the defendant has limited mobility, requiring the use of a quad cane or walker to ambulate. In addition, he is in persistent pain. In support of his petition, he submitted a letter from one of his treating medical professionals who described the defendant's medical condition and opined that the defendant is "permanently disabled."
V. Analysis
The defendant established, by clear and convincing evidence, facts warranting a [*4]downward modification of his existing risk level classification to a risk level one (see e.g. People v Stevens, 55 AD3d 892, 894). The defendant's submissions demonstrated that, through his long-term sobriety, strong family support, faith-based and law abiding lifestyle, continuous employment despite his numerous physical disabilities and age, his risk of reoffending is so diminished that a further reduction from his current risk level two to risk level one is appropriate (see People v Stevens, 55 AD3d at 894). Neither the Board nor the prosecution submitted any contradictory evidence to overcome the defendant's substantial showing. Rather, the People oppose a further downward modification based solely on the defendant's past significant criminal record.
In People v Stevens, at his initial SORA hearing held in 1996, upon his release from prison, the defendant was designated a level three sex offender. Thereafter, pursuant to the settlement in Doe v Pataki (3 F Supp 2d 456)[FN3], the defendant appeared at a hearing in August 2006 to redetermine his sex offender risk level (see People v Stevens, 55 AD3d at 894). The People submitted the original RAI prepared by the Board for the first SORA hearing which had assessed the defendant 110 points (see id.). After the hearing to redetermine the defendant's risk level, the SORA court determined that the defendant had correctly been assessed 110 points and denied the defendant's application for a downward departure (see id.). On appeal, this Court reversed the denial of the defendant's request for a downward departure of his presumptive risk level from three to one based, in part, upon the defendant's debilitating illness arising from a progressive neurological disease which had little likelihood of reversal and which impaired his ability to experience sexual gratification. This Court found that "[t]he defendant's medical condition greatly diminishes the risk that he poses" (id.).
While People v Stevens pertained to a defendant's application for a downward departure where he was entitled to a new hearing four years after his initial SORA designation to redetermine his risk level, it is instructive to the case at bar which involves a petition for a downward modification. Similar to the defendant in Stevens, here, the defendant suffers from debilitating illnesses which have rendered him "permanently disabled" according to one of his treating physicians, which would certainly "greatly diminish[ ] the risk that he poses" (id. at 894) and significantly minimizes his ability to reoffend. Moreover, subsequent to his incarceration and beyond the undisputed significant physical difficulties experienced by the defendant, he has concededly led an exemplary life and lifestyle. The defendant fulfilled and satisfied all expectations established for his rehabilitation, including remaining sober for nearly two decades and successfully completing his sex offender treatment and therapy.
In partially granting the petition for a downward modification of the defendant's sex offender risk level classification from three to two, the Supreme Court correctly noted that a downward reduction should be "the exception not the rule (People v Guaman, 8 AD3d 545[, 545])" (see e.g. Guidelines at 4). The court noted the defendant's positive accomplishments in achieving rehabilitation in compliance with his parole and SORA obligations, as well as his successful adjustment to the community which accepted him despite his past crimes. Nevertheless, the court assigned great weight to the severity of the defendant's crimes, the most recent of which occurred in 1983, 34 years prior to his current petition. The court found that the nature of the defendant's criminal record "on balance" warranted only a downward modification to a level two sex offender rather than a further modification to a level one. In so doing, the Supreme Court relied on People v Abdullah (31 AD3d 515, 516), in which this Court departed from the defendant's presumptive level three risk classification only to the extent of designating him a level two risk classification despite the defendant having demonstrated during his hearing to re-determine his risk level following the settlement in Doe v Pataki that he led an "exemplary life" (id. at 516). However, a number of pertinent, additional factors which are present in the case at bar were not present in the Abdullah case [*5]such that the outcome in the Abdullah case is not truly analogous to the present case. In addition, more importantly, while the nature of a defendant's crime is a relevant, important factor to be considered by the hearing court and, most certainly cannot and should not be minimized, it should not be given so much weight that the court loses sight of SORA's primary objective: a thorough analysis of a defendant's likelihood of reoffending and the danger the defendant poses to the community in which he or she resides if a downward departure or modification with its lesser reporting requirements is granted. Simply put, if a defendant served his or her sentence, rehabilitated himself or herself, and demonstrated no actual likelihood of reoffending, a reduction to a risk level one classification from a level three classification should be a possibility.
Although a reduction in risk level should be the exception, it also should not be that such an exception can never present itself to the courts. Here, this defendant has presented such a compelling, exceptional case.
In modifying the Supreme Court's order which reduced the defendant's sex offender risk level classification from three to two, and thereby granting the petition to further reduce the defendant's sex offender risk level designation to a level one, we are not signaling a departure from our strict interpretation of the Guidelines and the legislative history of SORA. Rather, we are following the law, and the policy underlying it, as it applies to this defendant. That is, it is not out of sympathy for his physical condition nor with a blind eye to the defendant's significant criminal past that we render our determination. Rather, we consider these as well as all of the factors—positive and negative—presented at the hearing on his petition for a downward modification in deciding the singular question presented: Did the defendant establish, by clear and convincing evidence, that the risk he poses to the community as a convicted sex offender warrants a downward modification to level one? We answer that question in the affirmative.
To hold otherwise ignores the sincere, positive strides the defendant has made to be a productive, positive member of society. By using the disturbing nature of one's crime as the tipping point in the analysis of a petition such as the one before this Court comes dangerously close to saying, if not holding, that once one has committed a sex crime and has been designated a sex offender level, there is no way he or she can ever be rehabilitated to a legally sufficient extent to warrant a downward modification to the lowest level of supervision. If that were so, then the cited portions of the Guidelines and Correction Law § 168-o(2), which allow annual reevaluation of a defendant's risk level after it is initially established, would be rendered without meaning and illusory. We are unwilling to say that. Rather, we hold that SORA and its Guidelines recognize that sex offenders can improve themselves to the point that they no longer pose a high or even moderate threat of reoffending.
Further, our application of SORA and its Guidelines holds the promise of the recognition of rehabilitation so as to incentivize a sex offender to achieve that which this defendant has achieved (cf. Guidelines at 4).
VI. Conclusion
Given that the Supreme Court properly recognized the defendant's "laudable strides" in turning his life around by granting his petition to the extent of reducing his risk level from a three to a two, a reduction to which the Board and the People agreed was appropriate, the court should have granted the defendant's petition for a downward modification without limitation, upon his submission of undisputed clear and convincing evidence that such a further modification was warranted. Accordingly, under these circumstances, the court improvidently exercised its discretion in denying the defendant's petition to the extent that he sought a modification of his risk level classification to a level one, and should have designated the defendant a level one sex offender.
ORDERED that the order is modified, on the facts and in the exercise of discretion, by deleting the provision thereof granting the defendant's petition for a downward modification of his risk level classification only to the extent of designating him a level two sex offender, and substituting therefor a provision granting the defendant's petition for a downward modification and designating him a level one sex offender; as so modified, the order is affirmed.
COHEN, BRATHWAITE NELSON and IANNACCI, JJ., concur.
ORDERED that the order is modified, on the facts and in the exercise of discretion, by deleting the provision thereof granting the defendant's petition for a downward modification of his risk level classification only to the extent of designating him a level two sex offender, and [*6]substituting therefor a provision granting the defendant's petition for a downward modification and designating him a level one sex offender; as so modified, the order is affirmed, without costs or disbursements.
ENTER:
Aprilanne Agostino
Clerk of the Court



Footnotes

Footnote 1: In 2003, Penal Law § 130.50 was amended such that the term "criminal sexual act" was substituted for the term "sodomy" (see L 2003, ch 264, § 20).

Footnote 2: As to the threat of reoffending, there are three risk levels identified in Correction Law § 168-l(6); to wit: level one (low risk), level two (moderate risk), and level three (high risk). 

Footnote 3:In Doe v Pataki, the United States District Court for the Southern District of New York found that the procedural due process rights of those defendants whose SORA risk level determinations had been administratively made, without first affording them an opportunity to challenge such determinations, had been violated (see 3 F Supp 2d 456, 473). Following that determination, a settlement was reached whereby hearings were provided to those defendants who had not been afforded hearings prior to administrative determinations designating their SORA risk level being made.