# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 49
The People &c.,
   Respondent,
  v.
Michael Worley,
   Appellant.

William Kastin, for appellant.
Michael Bierce, for respondent.

RIVERA, J.:

Persons required to register as sex offenders are entitled to the due process protections of notice and an opportunity to be heard before a court determines their risk level classification under the Sex Offender Registration Act (SORA) (*see Doe v Pataki*, 3

- 1 -

F Supp 2d 456, 471-472 [SD NY 1998]; *People v Baxin*, 26 NY3d 6, 10 [2015]; *People v David W.*, 95 NY2d 130, 138 [2000]; *see also* Correction Law § 168-n [3]). We hold that the SORA court deprived defendant of those basic procedural guarantees when it upwardly departed from the presumptive risk level without affording defendant notice or an opportunity to contest the basis for the departure.

I.

In 2012, then-19-year-old defendant Michael Worley engaged in forcible sexual intercourse with a 12-year-old child. He pleaded guilty to attempted rape in the first degree (*see* Penal Law §§ 110.00, 130.35 [4]) and endangering the welfare of a child (*see id.* § 260.10 [1]) and was sentenced to 3½ years' imprisonment followed by 15 years' post-release supervision. These convictions required him to register under SORA (*see* Correction Law § 168 *et seq.*).

Prior to defendant's release from prison, the Board of Examiners of Sex Offenders (the Board) prepared a risk assessment instrument (RAI) and case summary scoring defendant 115 points under various risk factors for a presumptive level 3 risk classification.[1] As relevant to this appeal, the Board explained that because defendant

---

[1] The presumptive risk level is calculated by adding points assessed against the offender under 15 enumerated risk factors set forth in the Board's Guidelines (*see* SORA: Risk Assessment Guidelines and Commentary [2006]). If the total score is 70 points or fewer, the offender is presumptively classified as a level one risk to sexually reoffend; if the total score is more than 70 but fewer than 110, the offender is presumptively level two; if the total score is 110 points or more, the offender is presumptively level three (*see id.*; *see also* Correction Law § 168-l [6] [a]-[c]). An offender may also be subject to an automatic override to a higher risk level than allotted by the point score (*see* Guidelines at 3-4). Either party to a SORA proceeding may request that the court depart from the presumptive risk

incurred nine tier III and ten tier II disciplinary sanctions while incarcerated it assessed him 10 points under risk factor 13 for unsatisfactory conduct while confined. The Board also assessed defendant 15 points under risk factor 12 for refusing or being expelled from sex offender treatment because, according to the case summary, defendant was referred for such treatment but removed for "disciplinary reasons." The Board did not recommend a departure from the presumptive risk level.

At the SORA hearing, the Assistant District Attorney (ADA) initially requested a risk level 3 classification based on the 115 points assessed by the Board. However, the ADA acknowledged a "discrepancy" in the case summary regarding risk factor 12, explaining that defendant was never referred for sex offender treatment because his disciplinary history required him to stay in restrictive housing. Defendant objected to the assessment of 15 points under risk factor 12 and sought to bring his total score to 100 points, for a presumptive risk level 2 classification. Specifically, relying on *People v Ford* (25 NY3d 939 [2015]), defendant argued that his ineligibility for treatment based on his disciplinary history cannot be equated with refusal to participate in treatment for purposes of risk factor 12. The SORA court raised the issue whether *Ford* contemplated an upward departure from the presumptive risk level based on an extensive disciplinary history. Defense counsel protested that the District Attorney never requested a departure and defendant had not received notice.

level based on aggravating or mitigating factors "of a kind or to a degree not adequately taken into account by the guidelines" (*People v Gillotti*, 23 NY3d 841, 861 [2014]).

"[COUNSEL]:     . . . By case law he is not – he should not be assessed points on that category.

THE COURT:     I believe – I don't know if that [] case suggested that the extensive disciplinary history may be a reason for departure.

[COUNSEL]:     The D.A. didn't ask for it to be a departure. I have no notice of departure.

THE COURT:     I am not here to do what the D.A. necessarily asks. The court makes the following findings of fa[c]ts and conclusions. I find that the People have [established] 100 points. The 15 points not assessed because he does – does not constitute a refusal or expulsion from sex offender treatment. But his disciplinary record prevented him from receiving the sex offender treatment. So, based upon the 100 points he would be required to register as a Level Two Sex offender. However, I do use the extensive prior disciplinary history established by the record for an upward departure to level three. I will sign an order designating him a level three offender. . . . Exception to the Defense."

Defense counsel then asserted that the court could not upwardly depart absent a request from the District Attorney. In response, the court stated that it would hear the ADA as to a request for an upward departure. The ADA obliged and requested an upward departure based on defendant's "extensive disciplinary history involving nine tier three sanctions" and "numerous tier two sanctions." Defense counsel again objected and insisted defendant was entitled to 10 days' notice. The court concluded the hearing by stating "[t]he order is signed. You have an exception for the record."

The Appellate Division affirmed, holding that the SORA court acted within its discretion to upwardly depart to level three based on defendant's extensive disciplinary

history (*see* 202 AD3d 1008 [2d Dept 2022]). We granted defendant leave to appeal (*see* 38 NY3d 912 [2022]), and we now reverse and remit for a new SORA hearing.

II.

Prior to an offender's discharge, parole or release, the sentencing court must determine whether to designate "an offender [] a sexual predator, sexually violent offender, or predicate sex offender" as defined in SORA (Correction Law § 168-n [1]; *see id.* § 168-a [7] [a]-[c]) and apply the Board's SORA Guidelines to determine an offender's "level of notification" (*id.* § 168-n [2]; *see id.* § 168-l [6] [a]-[c]). Defendant is entitled to a hearing in accordance with SORA's procedural requirements before the court issues its classification decision.

As relevant here, the Board must provide the sentencing court with its recommendations 60 days prior to a defendant's release (*see id.* § 168-l [6]). Pursuant to section 168-n (3), the court must notify the defendant, their counsel and the District Attorney of the SORA hearing date and furnish the parties a copy of the Board's recommendations and statement of its reasoning. "If the district attorney seeks a determination that differs from the recommendation submitted by the board, at least ten days prior to the determination proceeding the district attorney shall provide to the court and the sex offender a statement setting forth the determinations sought by the district attorney together with the reasons for seeking such determinations" (*id.*). The court makes these determinations only after: (1) receiving the Board's recommendation and submissions regarding the offender designation and risk level classification (*see id.* §§

168-n [1], [2]); (2) receiving any different determinations—and reasons therefor—proposed by the District Attorney; (3) a hearing where the defendant may object to those recommendations; and (4) consideration of any materials and evidence submitted by the offender and the District Attorney (*see id.* § 168-n [3]).

The statutory notice provision was enacted to address the federal constitutional due process infirmities identified in *Doe v Pataki* (3 F Supp 2d at 456; Ltr of Legislative Bureau Chief, Bill Jacket, L 1999, ch 453 at 6 [explaining that the procedures in section 168-n [3] were recommended in response to *Doe*]).[2] "It is well established that sex offenders are entitled to certain due process protections at their risk level classification proceedings" (*Baxin*, 26 NY3d at 10), and the basic hallmarks of due process are notice and an opportunity to be heard (*see David W.*, 95 NY2d at 138). Proper notice is essential to achieve SORA's goal that an offender arrive at the hearing informed of the bases for the Board's and the District Attorney's recommendations and is also afforded an opportunity to challenge the grounds propounded by both. Otherwise, an offender would prepare for the hearing solely relying on the Board's determinations, factor by factor and point

---

[2] After observing that a risk level classification hearing falls "somewhere between a criminal proceeding in which a defendant is entitled to a full panoply of rights, . . . and a simple administrative proceeding, in which participants have traditionally been afforded less process," the *Doe* court held that due process requires, at a minimum: a hearing; advance notice of the hearing containing a statement of its purpose and the Board's recommended risk level; an opportunity to obtain counsel or, where the offender is indigent, court appointment of counsel; "pre-hearing discovery of the evidence on which the Board's risk level recommendation is based[;]" a requirement that the government prove the facts supporting each relevant risk factor by clear and convincing evidence; and a right to appeal (3 F Supp 2d 456, 470-472 [SDNY 1998] [citation omitted]).

assessment by point assessment, without advance knowledge of the reasoning upon which the District Attorney will rely in support of a different offender designation, risk classification or underlying grounds. That is not due process under law. Indeed, due process requires that a SORA defendant receive sufficient notice and an opportunity to be heard before an upward departure is granted.

### III.

Here, the proceeding failed to comport with due process because defendant was provided no notice or meaningful opportunity to be heard in response to the District Attorney's request for an upward departure first interposed during the SORA hearing in response to the court's invitation. The Board recommended the court classify defendant as a level three offender based on his risk factor score of 115 points and did not recommend an upward departure or that the court consider defendant's disciplinary history for purposes aside from a factor 13 point allocation. Although the District Attorney agreed with the Board that defendant should be classified as a level three risk, the District Attorney reached that conclusion not on the total point assessment contained in the RAI but rather on an independent basis that defendant's disciplinary history was sufficiently egregious to warrant an upward departure. Once the District Attorney announced its deviation from the reasons supporting the Board's proposed risk level classification, defendant was entitled to a sufficient opportunity to consider and muster evidence in opposition to the request for an upward departure. The record shows that the court decided the issue without an adjournment, without allowing defendant to present rebuttal arguments or collect

additional evidence, and without any input from defense counsel. The court erred by proceeding in this manner.

Under these circumstances, the SORA court denied defendant the due process to which he is entitled. The proper remedy for this violation is a new judicial determination of defendant's SORA classification, made after timely notice of the Board and District Attorney's recommendations and reasons in support, and upon consideration of the parties' arguments and the evidence submitted at the scheduled hearing.

IV.

Defendant's remaining contentions are rendered academic. Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to Supreme Court for further proceedings in accordance with this opinion.

GARCIA, J. (concurring):

I believe the order of the Appellate Division should be reversed and the matter remitted for a new hearing.

Defendant pled guilty to attempted rape in the first degree (*see* Penal Law §§ 110.00, 130.35 [4]) and endangering the welfare of a child (*see id.* § 260.10 [1]).  Defendant's conviction required him to register as a sex offender pursuant to the Sex Offender Registration Act (SORA) (*see* Correction Law § 168 *et seq.*).  The Board of Examiners of Sex Offenders prepared a risk assessment instrument and case summary scoring defendant 115 points, which rendered him a presumptive level three offender.

At defendant's SORA hearing, defendant objected to the assessment of 15 points, the elimination of which would have reduced his presumptive risk level to level two.  The court agreed and deducted those points from defendant's risk assessment score but indicated that it would nonetheless depart upward and classify defendant a level three offender.  When defense counsel attempted to object concerning lack of notice, the court summarily denied the objection and informed counsel he had an "exception" (*see People v Finch*, 23 NY3d 408, 413 [2014]; *People v Lewis*, 23 NY3d 179, 188 [2014]).  On this unique record, the SORA court erred in denying defense counsel any opportunity to be heard on the issue of an upward departure (*see People v David W.*, 95 NY2d 130, 136-138 [2000]).  Defendant is therefore entitled to a new SORA hearing.

Order reversed, without costs, and matter remitted to Supreme Court, Kings County, for further proceedings in accordance with the opinion herein. Opinion by Judge Rivera. Chief Judge Wilson and Judges Troutman and Halligan concur. Judge Garcia concurs in an opinion, in which Judges Singas and Cannataro concur.

Decided June 15, 2023